**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| SANDRA D.,<br><br>    Plaintiff,<br><br>  v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | Case No. 2:21-cv-13525 (BRM)<br><br>**OPINION** |

**MARTINOTTI, DISTRICT JUDGE**

Before the Court is an appeal by Plaintiff Sandra D. ("Plaintiff") of the final decision of the Commissioner of Social Security ("Commissioner"),[1] denying her applications for Social Security Disability Insurance Benefits under Title II of the Social Security Act (the "Act"). This Court exercises jurisdiction pursuant to 42 U.S.C. § 405(g). Having considered the submissions of the parties without oral argument, pursuant to L. Civ. R. 9.1(f), and for the reasons set forth below and for good cause shown, the Commissioner's decision is **AFFIRMED**.

## I. BACKGROUND

This case arises out of Plaintiff's challenge to the administrative decision of the Commissioner regarding her application for a period of disability and disability insurance benefits. (Tr. 1–6.) Plaintiff alleges disability due to suffering from diabetes mellitus, chronic obstructive

---

[1] Upon the Appeals Council's Order denying Plaintiff's request for a review of the decision of Administrative Law Judge, the decision of the Administrative Law Judge became the final decision of the Commissioner. (ALJ Hearing Decision, Tr. 1.)

pulmonary disease, major depressive disorder, neuropathy of the legs and feet, carpal tunnel in the

hands, generalized anxiety disorder, gastroesophageal reflux disease, and stroke. (*Id.* at 252.)

On June 29, 2019, Plaintiff applied for disability insurance benefits, alleging disability

beginning January 24, 2017. (*Id.* at 11.) The claim was denied initially on September 17, 2019,

and upon reconsideration on December 30, 2019. (*Id.*) Plaintiff filed a written request for a hearing

on January 10, 2020. (*Id.*) Plaintiff subsequently amended the alleged onset date of disability to

August 10, 2018. (*Id.*) On July 24, 2020, Plaintiff appeared and testified at a hearing before

Administrative Law Judge Scott Tirrell ("ALJ"). (*Id.*) An impartial vocational expert attended by

telephone and testified at the hearing. (*Id.*) Theresa Papagna, APN ("Ms. Papagna"), a psychiatric

nurse practitioner and Plaintiff's treating medical source, offered her opinions on Plaintiff's

condition and limitations.[2] (*Id.* at 72.)

As reflected in his written decision dated October 5, 2020, the ALJ, after considering the

entire record, made the following determinations concerning Plaintiff:

> 1. The claimant last met the insured status requirements of the Social
> Security Act on June 30, 2019.
>
> 2. The claimant did not engage in substantial gainful activity during
> the period from her amended alleged onset date of August 10, 2018
> through her date last insured of June 30, 2019 (20 CFR 404.1571 *et
> seq.*).
>
> 3. Through the date last insured, the claimant had the following
> severe impairments: diabetes mellitus, with diabetic neuropathy;
> chronic obstructive pulmonary disease (COPD); asthma; bilateral
> carpal tunnel syndrome, with left ulnar mononeuropathy; status-post
> multiple transient ischemic attacks; obesity; generalized anxiety

---

[2] For claims filed after March 27, 2017, the revised medical source regulations recognize "Licensed
Advanced Practice Registered Nurse, or other licensed advance practice nurse with another title,
for impairment within his or her licensed scope" as appropriate medical sources. 20 C.F.R.
§ 404.1502(a)(8).

disorder; major depressive disorder; and panic disorder (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She could never climb ladders, ropes, or scaffolds. The claimant could frequently perform handling and fingering. She could never work at unprotected heights or work with machinery involving exposed moving mechanical parts. The claimant could tolerate occasional exposure to extreme cold, extreme heat, wetness, humidity, and to pulmonary irritants such as fumes, odors, dusts, gases, and poor ventilation. The claimant could understand, remember and carry out simple, routine instructions. She could sustain attention and concentration over an eight-hour workday, with customary breaks on simple, routine tasks. She could use judgment in making workrelated decisions commensurate with this same type of work. The claimant could adapt to changes in routine work settings. She could have occasional interaction with coworkers and supervisors, beyond any increased interactions initially required to learn the job, and could have occasional interaction with the public.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on April 9, 1969 and was 50 years old, which is defined as an individual closely approaching advanced age, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 404.1568).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national

economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 10, 2018, the amended alleged onset date, through June 30, 2019, the date last insured (20 CFR 404.1520(g)).

(*Id*. at 14–28). Accordingly, the ALJ denied Plaintiff's application for benefits, finding Plaintiff was not disabled from August 10, 2018 through June 30, 2019, the date last insured.[3] (*Id*. at 8–28.) On May 6, 2021, the Appeals Council denied Plaintiff's request for review of her appeal. (*Id*. at 1–7.)

Having exhausted her administrative remedies, Plaintiff filed an appeal with this Court on July 11, 2021. (ECF No. 1.) The administrative record is set forth in the transcript. (ECF No. 7.) On March 7, 2022, Plaintiff filed a memorandum of law in support of her appeal. (ECF No. 13.) On May 4, 2022, the Commissioner filed opposition. (ECF No. 16.) On May 19, 2022, Plaintiff filed her reply. (ECF No. 17.)

## II.    STANDARD OF REVIEW

On a review of a final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *see Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). The Commissioner's decisions regarding questions of fact are deemed conclusive by a reviewing court if supported by "substantial evidence" in the record. 42 U.S.C. § 405(g); *see Knepp*

---

[3] The record shows Plaintiff was insured through June 30, 2019. (Tr. 12.) Thus, Plaintiff was required to establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits. (*Id.*)

4

*v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). This Court must affirm an ALJ's decision if it is supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence "is more than a mere scintilla of evidence but may be less than a preponderance." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 545 (3d Cir. 2003). The Supreme Court reaffirmed this understanding of the substantial evidence standard in *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). To determine whether an ALJ's decision is supported by substantial evidence, this Court must review the evidence in its totality. *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984). "Courts are not permitted to re-weigh the evidence or impose their own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011). Accordingly, this Court may not set an ALJ's decision aside, "even if [it] would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999).

## III.   THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

Under the Act, the Social Security Administration is authorized to pay Social Security Insurance to "disabled" persons. 42 U.S.C. § 1382(a). A person is "disabled" if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A person is unable to engage in substantial gainful activity,

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the

5

immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated under the Act establish a five-step process for determining whether a claimant is disabled for purposes of disability insurance. 20 C.F.R. § 404.1520.[4] First, the ALJ determines whether the claimant has shown he or she is not currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(b); *see Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If a claimant is presently engaged in any form of substantial gainful activity, he or she is automatically denied disability benefits. *Id.*; *see also Bowen*, 482 U.S. at 140. Second, the ALJ determines whether the claimant has demonstrated a "severe impairment" or "combination of impairments" that significantly limits his physical or mental ability to do basic work activities. 20 C.F.R. § 404.1520(c); *see Bowen*, 482 U.S. at 140–41. Basic work activities are defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b). These activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
>
> (2) Capacities for seeing, hearing, and speaking;
>
> (3) Understanding, carrying out, and remembering simple instructions;
>
> (4) Use of judgment;
>
> (5) Responding appropriately to supervision, co-workers and usual work situations; and

---

[4] Regulations for disability insurance and supplemental income benefits are virtually identical. For the purposes of this appeal, further citations will only be made to the disability insurance benefits regulations regarding disability evaluation, 20 C.F.R. § 404.1501, *et seq*. The parallel supplemental income benefits regulations are found under 20 C.F.R. § 416.901, *et seq*.

6

(6) Dealing with changes in a routine work setting.

*Id.* A claimant who does not have a severe impairment is not considered disabled. 20 C.F.R.

§ 404.1520(c); *see Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999).

Third, if the impairment is found to be severe, the ALJ then determines whether the impairment meets or is equal to the impairments listed in 20 C.F.R. § 404, Subpart P, App'x 1 (the "Impairment List"). 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant demonstrates his or her impairments are equal in severity to, or meet, those on the Impairment List, the claimant has satisfied his or her burden of proof and is automatically entitled to benefits. *See* 20 C.F.R. § 404.1520(d); *see also Bowen*, 482 U.S. at 141. If the specific impairment is not listed, the ALJ will consider in his or her decision the impairment that most closely satisfies those listed for purposes of deciding whether the impairment is medically equivalent. *See* 20 C.F.R. § 404.1526. If there is more than one impairment, the ALJ then must consider whether the combination of impairments is equal to any listed impairment. *Id.* An impairment or combination of impairments is basically equivalent to a listed impairment if there are medical findings equal in severity to all the criteria for the one most similar. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

If the claimant is not conclusively disabled under the criteria set forth in the Impairment List, step three is not satisfied, and the claimant must prove at step four whether he or she retains the residual functional capacity ("RFC") to perform his or her past relevant work. 20 C.F.R. § 404.1520(e)–(f); *Bowen*, 482 U.S. at 141. Step four involves three sub-steps:

> (1) the ALJ must make specific findings of fact as to the claimant's [RFC]; (2) the ALJ must make findings of the physical and mental demands of the claimant's past relevant work; and (3) the ALJ must compare the [RFC] to the past relevant work to determine whether claimant has the level of capability needed to perform the past relevant work.

*Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 120 (3d Cir. 2000) (citations omitted). When determining RFC, an ALJ's consideration of medical opinion evidence is subject to the framework articulated at Section 404.1527 (for claims filed before March 27, 2017) or Section 404.1520c (for claims filed after March 27, 2017).[5]

The claimant is not disabled if his RFC allows him to perform his past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). However, if the claimant's RFC prevents him from doing so, an administrative law judge proceeds to the fifth and final step of the process. *Id.* The final step

---

[5] Regulations for disability insurance and supplemental income benefits are virtually identical. For claims filed before March 27, 2017, Section 404.1527, and its supplemental income benefits counterpart Section 416.927, outline the framework for consideration of medical opinions and prior administrative medical findings. Under these regulations, opinions from treating physicians are given preference. When determining RFC pursuant to this framework, "[a]n ALJ may reject a treating physician's opinion outright only on the basis of contradictory medical evidence, but may afford a treating physician's opinion more or less weight depending upon the extent to which supporting explanations are provided." *Hoyman v. Colvin*, 606 F. App'x 678, 679–80 (3d Cir. 2015) (quoting *Plummer*, 186 F.3d at 429)). Unsupported diagnoses are not entitled to great weight. *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991). Moreover, an ALJ must provide the reason for giving more or less weight to the evidence. *See Fragnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).

Sections 404.1520c, and its supplemental income benefits counterpart Section 416.920c, are effective for cases filed on or after March 27, 2017. These regulations "eliminated the hierarchy of medical source opinions that gave preference to treating sources." *David K. v. Kijakazi*, Civ. A. No. 20-12419, 2022 U.S. Dist. LEXIS 13989, at *21 (D.N.J. Jan. 25, 2022). Under these regulations the following factors are considered for all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. §§ 404.1520c(c), 416.920c(c). The most important factors that the agency considers when evaluating the persuasiveness of medical opinions are supportability and consistency. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the relevant objective medical evidence. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). Consistency means the extent to which a medical opinion is consistent with the evidence from other medical sources and nonmedical sources in the claim. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

8

requires the administrative law judge to "show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with her medical impairments, age, education, past work experience, and [RFC]." *Plummer*, 186 F.3d at 428; 20 C.F.R. § 404.1520(a)(4)(v). In doing so, "[t]he ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether she is capable of performing work and is not disabled." *Id.*; 20 C.F.R. § 404.1523. Notably, an administrative law judge typically seeks the assistance of a vocational expert at this final step. *Id.* (citation omitted).

The claimant bears the burden of proof for steps one, two, and four. *Sykes v. Apfel*, 228 F.3d 259, 263 (3d Cir. 2000). Neither side bears the burden of proof for step three "[b]ecause step three involves a conclusive presumption based on the listings[.]" *Id.* at 263 n.2; *see Bowen*, 482 U.S. at 146–47 n.5. An administrative law judge bears the burden of proof for the fifth step. *Id.* at 263.

On appeal, the harmless error doctrine[6] requires a plaintiff to show, as to the first four steps: (1) an error occurred; and (2) but for that error, she might have proven her disability. *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016). In other words, when reviewing an appeal based on the first four steps, a court considers whether the plaintiff articulated a basis for a decision in her favor, based on the existing record. If the plaintiff cannot, it is unlikely she will meet her burden of showing an error was harmful. *See e.g., Lippincott v. Comm'r of Soc. Sec.*, 982 F. Supp. 2d 358, 380 (D.N.J. 2013) (finding ALJ's error was harmless); *Powers v. Comm'r of Soc.*

---

[6] The Supreme Court explained its operation in a similar procedural context in *Shinseki v. Sanders*, which concerned review of a governmental agency determination. 556 U.S. 396, 408–11 (2009). The Supreme Court stated: "the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* at 409. In such a case, "the claimant has the 'burden' of showing that an error was harmful." *Id.* at 410.

*Sec.*, Civ. A. No. 19-21970, 2021 U.S. Dist. LEXIS 62340, at *20 (D.N.J. Mar. 31, 2021) (finding the plaintiff had not demonstrated she was prejudiced by the ALJ's decision and had not shown an error occurred amounting to harm).

The court's review of legal issues within this appeal is plenary. *See Schaudeck v. Comm'r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999). Factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings." *Sykes*, 228 F.3d at 262. Substantial evidence is "less than a preponderance of the evidence but more than a mere scintilla." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004) (citation omitted). Substantial evidence also "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation and internal quotation marks omitted). When substantial evidence exists to support the Commissioner's factual findings, this Court must abide by those determinations. *See id.* (citing 42 U.S.C. § 405(g)).

## IV.   DECISION

Plaintiff challenges the ALJ's mental RFC determination, arguing it is unsupported by substantial evidence for allegedly failing to reconcile the June 2020 opinion of Ms. Papagna, Plaintiff's treating medical source. (ECF No. 13 at 9–12.) The Commissioner argues the ALJ's mental RFC assessment is supported by substantial evidence in view of the record as a whole, and the ALJ was not required to adopt Ms. Papagna's opinion wholesale to include every degree of limitation in the RFC. (ECF No. 16 at 8–12.)

A claimant's RFC is the most she can still do despite her limitations. 20 C.F.R. § 404.1545(a)(1). The RFC assessment is based on all the relevant evidence in the record, *id.*, and descriptions and observations of the claimant's limitations from her impairments provided by the claimant and other persons, 20 C.F.R. § 404.1545(a)(3); 20 C.F.R. § 404.1529. When assessing

mental abilities, the nature and extent of the claimant's mental limitations and restrictions is assessed first and is followed by a determination of her residual functional capacity for work activity on a regular and continuing basis. 20 C.F.R. § 404.1545(c). "A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work." *Id.* When the claimant has severe impediments, all the limiting effects are considered, including non-severe impediments. 20 C.F.R. § 404.1545(e).

The ALJ must explain his or her reasoning such that the RFC determination is amenable to meaningful review. *Burnett*, 220 F.3d at 119. However, the ALJ is not required "to use particular language or adhere to a particular format in conducting his analysis," and the ALJ's decision must be "read as a whole" to determine whether he considered the appropriate factors in reaching his conclusion. *Jones*, 364 F.3d at 505. A district court is "bound by the Secretary's findings of fact if they are supported by 'substantial evidence.'" *Newhouse*, 753 F.2d at 285 (citing 42 U.S.C. § 405(g)); *Sykes*, 228 F.3d at 262 (holding factual findings are reviewed "only to determine whether the administrative record contains substantial evidence supporting the findings"). Substantial evidence is "relevant evidence which a reasonable mind might deem adequate to support a conclusion." *Id*.

Here, in assessing Plaintiff's mental RFC, the ALJ found:

> [Plaintiff] could understand, remember and carry out simple, routine instructions. She could sustain attention and concentration over an eight-hour workday, with customary breaks on simple, routine tasks. She could use judgment in making work-related decisions commensurate with this same type of work. The claimant could adapt to changes in routine work settings. She could have occasional interaction with coworkers and supervisors, beyond any increased

interactions initially required to learn the job, and could have occasional interaction with the public.

(Tr. 17.) In reaching his findings, the ALJ considered Plaintiff's treatment history, medical records, and opinions of treating medical sources. The ALJ determined Plaintiff experienced moderate limitation in concentrating, persisting, or maintaining pace, as well as moderate limitations to adapting or managing herself. (*Id.* at 16.) The ALJ found one examination performed in June 2018 revealed Plaintiff was "more than one standard deviation below average in the cognitive domains of executive function, attention, information processing speed, visual speed, verbal function and motor skills." (*Id.* at 21.) The ALJ noted there were no significant abnormalities of focus, attention, or concentration mentioned on mental status examinations and Plaintiff was consistently described as alert and oriented. (*Id.*) On examination performed in May 2019, the ALJ remarked Plaintiff "was able to follow complex directions." (*Id.*) The ALJ also considered seven mental examinations performed on Plaintiff between September 2018 and June 2019, noting despite Plaintiff's reported depression and anxiety, her mood and affect were described as normal or appropriate. (*Id.*) The ALJ reviewed tests performed in September and December 2018, and March and June 2019, which revealed Plaintiff's behavior and judgment were consistently described as normal. (*Id.*) The ALJ added the medical records in evidence do not describe any significant abnormalities of memory, cognition, intelligence, insight, or impulse control on mental status examinations performed during the relevant period. (*Id.* at 16–17.)

The ALJ further considered the various opinions of several medical sources, including Ms. Papagna. According to the ALJ, in an assessment from May 2019, Ms. Papagna opined Plaintiff was "moderately limited in her ability to concentrate, persist or maintain pace," and "mildly to moderately limited in her ability to adapt or manage oneself." (Tr. 22.) In a later assessment from

12

June 2020, Ms. Papagna indicated Plaintiff was "moderately to markedly limited in her ability to concentrate, persist or maintain pace, and markedly limited in her ability to adapt or manage oneself." (Tr. 23.) When summarizing Ms. Papagna's medical findings, the ALJ discussed the portions of Ms. Papagna's opinions that were consistent with the medical evidence of record, stating:

> Dr. Papagna's opinions are consistent with the medical evidence of record, as previously described. In particular, the moderate limitations assessed by Dr. Papagna are consistent with testing that showed more than one standard deviation below average in the cognitive domains of executive function, attention, information processing speed, visual speed, verbal function and motor skills (Exhibit C4F/14). The mild limitations assessed by Dr. Papagna are consistent with the claimant being described as alert and oriented with normal/appropriate mood, affect, behavior and judgment on multiple mental status examinations performed during the period at issue.

(Tr. 23.) In view of the record as a whole, there is substantial evidence supporting the ALJ's mental RFC determination. *See Hopkins v. Comm'r Soc. Sec.*, 813 F. App'x 775, 778 (3d Cir. 2020) (holding the court "defer[s] to the ALJ's 'findings of fact if they are supported by substantial evidence in the record.'" (citing *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000)). In determining Plaintiff was moderately limited in concentrating, persisting, or maintaining pace, as well as moderately limited in adapting or managing herself, the ALJ reasonably relied on relevant evidence—including examination results performed in June 2018 and seven subsequent visits in September, October, December 2018, and January, March, May, and June 2019. *See Williams*, 970 F.2d at 1182 (finding in applying the deferential substantial evidence standard of review, the court should not "weigh the evidence or substitute its conclusions for those of the fact-finder"). Therefore, because substantial evidence supports the ALJ's factual findings, the ALJ's determination should be left undisturbed. *See Monsour Med. Ctr. v. Heckler*, 806 F.2d 1185, 1190–

91 (3d Cir. 1986) (holding a district court cannot re-weigh the evidence but must affirm if the Commissioner's decision is supported by substantial evidence). Accordingly, the Commissioner's decision is **AFFIRMED.**[7]

---

[7] "Plaintiff must establish disability as of her date last insured." *Porter v. Comm'r of Soc. Sec.*, Civ. A. No. 18-03744, 2019 U.S. Dist. LEXIS 105567, at *13 (D.N.J. June 25, 2019). "Evidence of an impairment which reached disabling severity after the date last insured or which was exacerbated after this date, cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits, even though the impairment itself may have existed before [a] plaintiff's insured status expired." *Kwasnik v. Kijakazi*, Civ. A. No. 21-08573, 2022 U.S. Dist. LEXIS 116234, at *52 (D.N.J. June 30, 2022) (quoting *Marsella v. Comm'r of Soc. Sec.*, Civ. A. No. 18-2294, 2019 U.S. Dist. LEXIS 28995, at *31 (D.N.J. Feb. 25, 2019); *Manzo v. Sullivan*, 784 F. Supp. 1152, 1156 (D.N.J. 1991)); *see also Arnone v. Bowen*, 882 F.2d 34, 38 (2d Cir. 1989) ("[R]egardless of the seriousness of his present disability, unless [the plaintiff] became disabled before [the date last insured], [she] cannot be entitled to benefits."). The relevant period of disability was from the amended onset date of August 10, 2018 through June 30, 2019, the date last insured. (Tr. 8–28.) Ms. Papagna completed her first mental assessment of Plaintiff in May 2019, opining Plaintiff was moderately limited in her ability to concentrate, persist, or maintain pace, as well as mildly to moderately limited in her ability to adapt or manage herself. (*Id.* at 22.) Ms. Papagna completed her second mental assessment of Plaintiff in June 2020, nearly one year after Plaintiff's date last insured. (*Id.* at 23.) During the June 2020 examination, Ms. Papagna found Plaintiff was moderately to markedly limited in ability to concentrate, persist, or maintain pace, and markedly limited in ability to adapt or manage herself. (*Id.*) Plaintiff challenges the mental RFC determination based on the ALJ's alleged failure to reconcile the marked limitation findings from the June 2020 examination. While there is substantial evidence supporting the ALJ's mental RFC determination, the opinion Plaintiff contests was not adequately reconciled falls outside the relevant period. Because the June 2020 examination was conducted after the date last insured, medical evidence from the June 2020 examination cannot be the basis for the determination of entitlement to a period of disability and disability insurance benefits. *See, e.g., Ortega v. Comm'r of Soc. Sec.*, 232 F. App'x 194, 197 (3d Cir. 2007) (holding the ALJ need not consider medical evidence "after [the] last insured date"); *Matullo v. Bowen*, 926 F.2d 240, 245–46 (3d Cir. 1990) (stating evidence relating to treatment after date last insured is not relevant to the question of whether the claimant has established she was under disability prior to expiration of her date last insured); *Hyler v. Colvin*, Civ. A. No. 12-4974, 2013 U.S. Dist. LEXIS 101356, at *26 (E.D. Pa. June 29, 2013), *report and recommendation adopted*, 2013 U.S. Dist. LEXIS 100317 (E.D. Pa. July 17, 2013) ("The relevant time period that the ALJ in this case must consider is whether plaintiff was disabled for DIB purposes at any time between plaintiff's alleged onset date . . . , and the date plaintiff was last insured . . . Evidence related to plaintiff's condition after the date last insured is irrelevant."); *Monette v. Astrue*, 269 F. App'x 109, 111 (2d Cir. 2008) ("[The claimant] would be eligible to receive disability insurance benefits if, but only if, he can demonstrate disability . . . before [his date last insured].").

## V.   CONCLUSION

For the reasons set forth above, the Court finds Plaintiff failed to show the ALJ erred in determining Plaintiff was not disabled under the Social Security Act. The Commissioner's decision is **AFFIRMED**.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Date: August 25, 2022